## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| MITSUBISHI HC CAPITAL AMERICA, INC. | ) | |
| | ) | |
| Plaintiff, | ) | No. 24 Civ. 2205 |
| | ) | |
| vs. | ) | |
| | ) | |
| SULAKHAN JOHAL and JASVIR JOHAL | ) | |
| Defendants. | ) | |

## COMPLAINT

Mitsubishi HC Capital America, Inc., formally known as Hitachi Capital America Corp. ("MHCA" or "Plaintiff"), by and through its counsel, and for its Complaint against Sulakhan Johal ("S. Johal") and Jasvir Johal ("J. Johal" or together with S. Johal, the "Defendants"), states and alleges as follows:

### INTRODUCTION

1.      This action stems from Defendants' default under two unconditional Personal Guaranty Agreements (collectively, the "Defaulted Guaranties").  A true and correct copy of S. Johal's Personal Guaranty is attached hereto as **Exhibit A**.  A true and correct copy of J. Johal's Personal Guaranty is attached hereto as **Exhibit B**.

2.      Since at least 2014, Plaintiff has provided financing arrangements to Defendants' non-party companies Pride Truck Sales L.P. ("Pride Truck") and Tpine Leasing Capital, L.P. ("Tpine") in the United States.  Under the financing arrangements with Tpine, Plaintiff purchased certain lease and/or contract receivables from Tpine at a discount.  Under the arrangement, Tpine received cash immediately and Plaintiff received an income stream.

3.      Pursuant to obligations set forth under the Defaulted Guaranties**,** Defendants

each agreed to personally guaranty Tpine's obligations under the financing arrangement described herein.

4.       However, following defaults by Tpine, Defendants have defaulted on their obligations under these Defaulted Guaranties.

5.       In fact, Defendants' default under the Defaulted Guaranties is just one of multiple instances in which they failed to honor other guaranty obligations to Plaintiff related to Plaintiff's financing of their two companies.

6.       Despite Plaintiff's notice to Defendants of defaults under the U.S. Financing Agreements (as defined below), Defendants have refused to honor their obligations under the Defaulted Guaranties.  Defendants are personally liable for damages suffered by Plaintiff, and Defendants' refusal to comply with the Defaulted Guaranties necessitated Plaintiff's filing of this action to recover amounts owed by Defendants.  Defendants' defaults under the Defaulted Guaranties have damaged Plaintiff in the approximate amount of no less than $2,160,000.00.

## THE PARTIES

7.       Plaintiff MHCA is a Delaware corporation with its principal place of business in Connecticut.  MHCA provides customized financing solutions to businesses to help meet their capital needs.   MHCA offers vehicles, trading, structure, and commercial vehicle finance services.

8.       Defendant Sulakhan Singh Johal a/k/a Sam Johal is a citizen of and domiciled in the Province of Ontario, Canada.

9.       Defendant Jasvir Johal is a citizen of and domiciled in the Province of Ontario, Canada.

## JURISDICTION AND VENUE

10.     This Court has original jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a)(1) because there is complete diversity of citizenship and the matter in controversy exceeds $75,000 exclusive of interest and costs.

11.     Additionally, Defendants contractually agreed to the personal jurisdiction of this Court.  Under Section 6.02 (titled "Consent to Jurisdiction") of the Defaulted Guaranties, each Defendant accepted "the exclusive jurisdiction" of this Court.  It is an accepted practice for parties to contract to establish exclusive jurisdiction.  *Khelalfa v. GE*, No. 1:19-cv-10727-MKV, 2021 U.S. LEXIS 266838, *10 (S.D.N.Y. Mar. 22, 2021) ("A forum selection clause is viewed as mandatory when it confers exclusive jurisdiction on the designated forum or incorporates obligatory venue language.").

12.     Venue is also proper in this Court pursuant to 28 U.S.C. § 1391, and Defendants contractually agreed that all actions arising directly or indirectly under Section 6.02 of the Defaulted Guaranties, further described herein, must be instituted and litigated in New York federal or state court.

## FACTUAL ALLEGATIONS

### A.     *Plaintiff Provided Financing to Defendants' Two Companies*

13.     Through a series of agreements, Plaintiff provided financing arrangements for two companies that Defendants own.

14.     Specifically, on or around November 21, 2018, Plaintiff entered into the Floorplan and Security Agreement ("Norwalk U.S. Floorplan Agreement") with Pride Truck, in which Defendants are each partners.

15.     On or around May 25, 2021, Plaintiff also entered into the Master Lease Receivables Sale and Assignment Agreement ("Norwalk Master Receivables Purchase

Agreement") with Tpine, another company owned by Defendants.  A true and correct copy of the Norwalk Master Receivables Purchase Agreement is attached hereto as **Exhibit C**.

16.     Also on or around May 25, 2021, Plaintiff entered into the Servicing and Remarketing Agreement with Tpine.  A true and correct copy of the Norwalk Servicing and Remarketing Agreement is attached hereto as **Exhibit D**.  The Servicing and Remarketing Agreement and Norwalk Master Receivables Purchase Agreement are by their terms a single undertaking.

17.     On or around May 31, 2023, Plaintiff entered into the Second Amended and Restated Program Agreement ("Program Agreement") with Tpine.

18.     Together, the Norwalk U.S. Floorplan Agreement, Norwalk Master Receivables Purchase Agreement, and Program Agreement are referred to herein as the "U.S. Financing Agreements".  Through the U.S. Financing Agreements, Plaintiff provided to Defendants' companies, Tpine and Pride Truck, financing in the U.S. for: (a) lease and contract receivables generated under commercial vehicle leases originated by Tpine, and (b) dealer floorplan (inventory financing) for Pride Truck.

19.     The Defaulted Guaranties at issue relate to the Norwalk Master Receivables Purchase Agreement and Servicing and Remarketing Agreement.

**B.     The Norwalk Master Receivables Purchase Agreement**

20.     Under the Norwalk Master Receivables Purchase Agreement, Defendants' company Tpine, which "[i]n its normal course of business . . . provides equipment lease financing for commercial vehicles," agreed to sell from time to time to Plaintiff "the rentals payable under certain of those leases, on the terms and conditions set forth" in the agreement.  Ex. C, at 1.

21.     Further, Tpine agreed to "provide financial accommodations to and for the benefit of" Tpine, while Tpine agreed to "provide servicing for the purchased lease receivables

and remarketing for leased equipment in accordance with the terms of this Agreement." *Id.*

### C.     Defendants Agreed to Be Personal Guarantors

22.     Defendants are personal guarantors for all the U.S. Financing Agreements, including the Norwalk Master Receivables Purchase Agreement and Servicing and Remarketing Agreement. *See* Ex. A; Ex. B.

23.     On or around March 25, 2021, which is around when the Norwalk Master Receivables Purchase Agreement and Servicing and Remarketing Agreement were executed, Defendants each entered into the Defaulted Guaranties.

24.     The Defaulted Guaranties serve to "jointly and severally and unconditionally and irrevocably" guaranty the obligations of Tpine, including the payment of all principal and interest and all other sums then and thereafter incurred by Tpine, including costs, expenses, and attorneys' fees. *See* Ex. A and Ex. B at §§ 3.01, 9.01.

25.     The Defaulted Guaranties state that "the liability of [Defendants] under this Guaranty shall be absolute and unconditional . . . ." *Id.* at § 3.02.

26.     Defendants also agreed to waive any rights to setoff, counterclaim, recoupment or similar rights to reduce the amounts owed. *Id.* at § 5.01. Defendants' obligations under the Defaulted Guaranties are absolute, regardless of notice or suit thereunder. *Id.* at § 3.03.

27.     Moreover, Defendants waived any defenses that they may have other than actual payment and performance under the Defaulted Guaranties. *Id.* at §§ 3.02, 5.01.

### D.     Defendants' Defaults and Refusal to Pay Plaintiff

28.     By or around December 21, 2023, Tpine was in default of the Norwalk Master Receivables Purchase Agreement and Servicing and Remarketing Agreement. In the Norwalk Master Receivables Purchase Agreement, Tpine represents and warrants that, except as set forth therein, none of the Lease Receivables and other Transferred Assets (each as defined under the

Norwalk Master Receivables Purchase Agreement) would be assigned to any other Person or are subject to any lien other than that created thereby.  Tpine notified Plaintiff on December 21, 2023 that certain Lease Receivables and Transferred Assets were also assigned to another third party purchaser or lender, and therefore, an Event of Default under Section 3.3(e) of the Master Assignment Agreement occurred.  Pursuant to Section 6.01(c) of the Servicing and Remarketing Agreement, an event of default shall occur upon a breach by Tpine of any of its obligations under the Norwalk Master Receivables Purchase Agreement, therefore a Servicer Event of Default (as defined in the Servicing and Remarketing Agreement) has occurred.

29.     Thus, Defendants were obligated to pay Plaintiff and make it whole pursuant to the Defaulted Guaranties.

30.     However, Defendants have refused to fulfill their obligations.

31.     On December 21, 2023, Plaintiff issued a Notice of Defaults and Reservation of Rights ("Notice of Default") to Defendants and their non-party companies that the default under the Agreement was continuing and remain uncured.  A true and correct copy of the Notice of Default is attached hereto as **Exhibit E**.

32.     To date, neither Defendants nor Defendants' companies, have cured the defaults under the Norwalk Master Receivables Purchase Agreement and Servicing and Remarketing Agreement and, thus, remain in breach of the Norwalk Master Receivables Purchase Agreement, the Servicing and Remarketing Agreement, and the Defaulted Guaranties.

33.     As of March 25, 2024, the amount due and owing, not including attorneys' fees and costs or appraisal costs, under the express terms of the Norwalk Master Receivables Purchase Agreement and Servicing and Remarketing Agreement, is $2,168,746.87.  The damages continue to accrue (including fees and costs) and remain subject to further revision by Plaintiff as the full scope of the damages caused by Tpine and Defendants crystalizes.

## COUNT I
### (Breach of Guaranty)

34.     Plaintiff repeats and realleges the allegations in paragraphs 1 through 33 as if fully set forth herein.

35.     Under the Defaulted Guaranties, Plaintiff is entitled to contractual money damages from Defendants as provided therein, both for the amounts due and owing under the Norwalk Master Receivables Purchase Agreement and Servicing and Remarketing Agreement, and for any damage inflicted upon the collateral, as well as any and all additional damages specified as a remedy after default.

36.     The Defaulted Guaranties provide that Plaintiff shall recover its attorneys' fees, costs of collection, and interest on all unpaid amounts due and owing.

37.     Notwithstanding their contractual obligations set forth in the Defaulted Guaranties and demand made by Plaintiff, each Defendant have failed to fulfill his obligations thereunder.

38.     Defendants' failure and refusal to satisfy Tpine's payment obligations to Plaintiff are clear and unambiguous breaches of the Defaulted Guaranties.

39.     As a direct and proximate result, Plaintiff has incurred and continues to incur substantial damages in an amount not less than $2,168,746.87, plus attorney's fees and costs and costs of suit.  Plaintiff has performed any and all conditions and obligations required of it under the Norwalk Master Receivables Purchase Agreement and Servicing and Remarketing Agreement.

WHEREFORE, Plaintiff MHCA respectfully prays that judgment be entered in its favor and against Defendants Sulakhan Johal and Jasvir Johal in the amount no less than $2,168,746.87, plus all past, current and further accruing interest, default interest, attorneys' fees, and costs, and for other and further relief that the Court deems just, equitable, and proper under the circumstances.

Dated: March 25, 2024

                                             Respectfully submitted,

                                             REED SMITH LLP

                                             By: */s/ Hyuna Yong*
                                             Hyuna Yong
                                             599 Lexington Avenue
                                             New York, NY
                                             Tel: (212) 549-0299
                                             Email: hyong@reedsmith.com

                                             *Counsel for Plaintiff Mitsubishi HC Capital America, Inc.*